IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

HECTOR OMAR SANTOYO,            )
                               )
          Petitioner,          )
                               )
                               )        CIV-05-1253-L
v.                             )
                               )
JUSTIN JONES, Director,         )
                               )
          Respondent.          )

SECOND SUPPLEMENTAL REPORT  AND  RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254.  Petitioner is challenging the conviction for

Trafficking in Illegal Drugs entered in accordance with a jury verdict in the District Court

of Oklahoma County, Case No. CF-2001-221, for which Petitioner is serving a sentence of

life imprisonment.  Respondent has responded to the Petition and filed the relevant state court

records, including the transcript of Petitioner's trial (hereinafter "TR___").  Petitioner has

filed a reply to the response. The matter has been referred to the undersigned Magistrate

Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  For the following

reasons, it is recommended that the Petition be DENIED.

I. Background

As a result of a traffic stop in Oklahoma County on October 17, 2000, and the

1

discovery of a large quantity of cocaine in the gasoline tank of the vehicle being driven by Petitioner, Petitioner and the passenger in the vehicle, Elizabeth Roybal ("Roybal"), were charged with Trafficking in Illegal Drugs (count one) and Maintaining a Vehicle Where a Controlled Dangerous Substance Is Kept (count two). A jury trial was conducted on these charges in the District Court of Oklahoma County on June 10-13, 2002. During the trial, the trial court granted Petitioner's demurrer to the evidence as to count two and dismissed that charge. The jury found Petitioner guilty of the offense of Trafficking in Illegal Drugs (cocaine) and assessed punishment of life imprisonment and a $75,000.00 fine. The trial court imposed a judgment and sentence consistent with the jury's finding of guilt and assessment of punishment.

Petitioner appealed the conviction. In his direct appeal, Petitioner contended that the evidence presented at his trial was insufficient to support the conviction, that prosecutorial misconduct denied him a fair trial, that the sentence imposed was excessive and disproportionate to the offense, and that the "cumulative effect of all these errors" denied Petitioner a fair trial. Response, Ex. B (Brief of Appellant). In a summary opinion, the Oklahoma Court of Criminal Appeals ("OCCA") rejected these claims and affirmed the conviction and sentence. Response, Ex. A (Santoyo v. State, No. F-2002-1038 (Okla. Crim. App. Apr. 21, 2004)(unpublished summary op.)).

Petitioner subsequently filed an application for post-conviction relief in the district court. In this post-conviction application, Petitioner alleged that he had been denied a fair trial due to cumulative errors and prosecutorial misconduct, that he had been denied his Sixth

2

Amendment right to effective assistance of trial counsel, and that he had been denied the right to effective assistance of appellate counsel.  Petitioner also asserted that the conviction and sentence should be reversed because he is innocent of the offense. Response, Ex. E (Brief in Support of Application for Post Conviction Relief). The post-conviction application was denied by the district court on September 14, 2005. Response, Ex. D (Order Denying Application for Post-Conviction Relief, Santoyo v. State, District Court of Oklahoma County, Case No. CF-2001-221, (Black, Virgil C., D.J.)).  The court found that all of the claims raised by Petitioner in his post-conviction application except for his claim of ineffective assistance of appellate counsel were procedurally barred as a result of Petitioner's failure to raise the issues in his direct appeal.  The court alternatively rejected Petitioner's claims on their merits and concluded that Petitioner had not established he received ineffective assistance of appellate counsel.  Petitioner appealed this decision to the OCCA. In an opinion entered January 13, 2006, the OCCA affirmed the district court's denial of post-conviction relief.  Response, Ex. F (Order Affirming Denial of Post-Conviction Relief, Santoyo v. State, No. PC-2005-972 (Okla. Crim. App. Jan. 15, 2006)).

Petitioner now seeks federal habeas relief concerning his conviction.  In ground one of the Petition, Petitioner asserts that the evidence presented at his trial was insufficient to support the conviction because there was no evidence of his knowledge or possession of the drugs found in his co-defendant's vehicle.  In ground two, Petitioner contends that prosecutorial misconduct during cross-examination of Petitioner and closing arguments denied him a fair trial.  In ground three, Petitioner contends that his sentence of life

imprisonment was unconstitutionally disproportionate to the offense.  In his fourth ground for habeas relief, Petitioner asserts that the "[s]eparate and cumulative effect of trial court errors and prosecutorial misconduct" denied him a fair trial and due process. Petition, at 11a. In grounds five and six of the Petition, Petitioner contends that he was denied his Sixth Amendment right to effective assistance of trial counsel.  In ground seven, Petitioner contends that his Sixth Amendment right to effective assistance of appellate counsel was denied.  In ground eight, Petitioner asserts that his "actual innocence" requires the reversal of his conviction and sentence.  The claims asserted in grounds one through three of the Petition were raised in Petitioner's direct appeal. The claims asserted in grounds four through eight were raised by Petitioner in his state court post-conviction proceeding.  Thus, Petitioner has exhausted state court remedies with respect to all of the claims asserted in the Petition.

II. Standard of Review - Claims Raised and Rejected on Direct Appeal

With respect to the issues raised by Petitioner in grounds one through three of the Petition, the OCCA rejected these same claims on their merits in Petitioner's direct appeal from his conviction.  Because the OCCA reached the merits of and rejected each of the these claims, habeas relief may be awarded only if the OCCA's adjudication of the same claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254 (d).  This standard, which was adopted as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), directs the focus of judicial

review to the state appellate court's decision and not its reasoning. Saiz v. Ortiz, 392 F.3d 1166, 1176 (10th Cir. 2004), cert. denied, __ U.S. __, 125 S.Ct. 2976 (2005).  Under this standard, federal courts reviewing habeas claims that have previously been resolved on the merits in state courts must apply a "level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).  A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion opposite to that reached by the Supreme Court on a question of law or (2) decided an issue differently than the Supreme Court has on a set of materially indistinguishable facts. Id. at 405-406.  The "state court decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions." Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(per curiam). "[A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Id. (quoting Early v. Packer, 537 U.S. 3, 8 (2002)(per curiam)).   A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner."  Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003).  With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court case] to the facts of his case in an objectively unreasonable manner," not merely that the state court

decision applied the Supreme Court case incorrectly. <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)(<i>per curiam</i>).  "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." <u>Holland v. Jackson</u>, 542 U.S. 649, 652 (2004)(<i>per curiam</i>)(citations omitted).   The AEDPA also mandates that factual findings made by a state trial or appellate court are presumptively correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

III. <u>Sufficiency of the Evidence</u>

Petitioner contends that there was insufficient evidence presented at the trial to prove his knowledge and possession of the drugs found in his co-defendant's vehicle.  Specifically, Petitioner contends there was no direct or circumstantial evidence linking him to the drugs found in the gasoline tank of his co-defendant's vehicle.  The OCCA rejected this claim in a summary opinion in Petitioner's direct appeal and found, without explanation, that the evidence was sufficient to support Petitioner's conviction for trafficking in cocaine.

Judicial review of Petitioner's habeas challenge to the sufficiency of the evidence presented at trial "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993).  For habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); <u>see</u> <u>Messer v. Roberts</u>, 74 F.3d 1009, 1013 (10th Cir. 1996)(quoting <u>Jackson</u>).   Both direct and circumstantial evidence is

considered in determining whether evidence is sufficient to support a conviction. Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir.), cert. denied, 523 U.S. 1110 (1998).  In applying this standard, the court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" Messer, 74 F.3d at 1013 (quoting Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993)).

Oklahoma follows the Jackson standard for evaluating claims of insufficient evidence to support a conviction. See Easlick v. State, 90 P.3d 556, 557-559 (Okla. Crim. App. 2004)(recognizing that Oklahoma follows the "unified approach" adopted in Jackson in examining sufficiency of the evidence issues).  Further, in Oklahoma, courts recognize there is no difference in the weight given circumstantial evidence or direct evidence. Id. at 559. Thus, sufficiency of the evidence claims are reviewed under a single, uniform standard, regardless of whether the evidence is wholly circumstantial or whether it is based in whole or in part on direct evidence.  Id.

In this case, the sufficiency of the evidence inquiry is based on Oklahoma law which defines the substantive elements of the crime. Jackson, 443 U.S. at 309, 324 n.16.   In Oklahoma, the elements of the trafficking offense are: (1) knowing, (2) possession, (3) of cocaine in the quantity of 28 grams or more.  White v. State, 900 P.2d 982, 986 (Okla. Crim. App. 1995).  In Oklahoma, "possession may be either actual or constructive, and need not be exclusive 'as long as there is proof that the defendant knowingly and willfully shared the right to control the dangerous substance.'" White v. State, 900 P.2d 982, 986 (Okla. Crim.

App. 1995).   In this circuit, "[t]o prove constructive possession where there is joint occupancy, the government must present direct or circumstantial evidence to show some connection or nexus individually linking [the defendant] to the contraband." United States v. Lazcano-Villalobos, 175 F.3d 838, 843 (10th Cir. 1999).

In Petitioner's trial, the evidence provided numerous plausible inferences of Petitioner's possession of the cocaine.   Petitioner was the driver of the vehicle in which the drugs were found hidden in the gasoline tank.   See United States v. Levario, 877 F.2d 1483, 1485-1486 (10th Cir. 1989), overruled on other grounds by Gozlon-Peretz v. United States, 498 U.S. 395 (1991)("it is permissible to infer that the driver of a vehicle has knowledge of the contraband within it").   The cocaine was located in a steel box concealed in the vehicle's gasoline tank which displaced 75 to 80 percent of the vehicle's only gasoline tank.   The highway patrol trooper who stopped Petitioner and his co-defendant testified that his drug dog alerted to the gasoline tank of the vehicle on the dog's first trip around the vehicle and that the gas tank bolts holding the gas tank on the vehicle appeared to have been recently manipulated.   He testified that the condition of the bolts indicated the bolts had been removed and replaced in their mounting area within a day or two.   There was testimony at trial that with the steel box inside the gasoline tank of the Suburban Petitioner was driving the tank would have held only between eight and ten gallons of gasoline, and normally the gasoline tank of a Suburban holds twenty-five to twenty-seven gallons of gasoline. It is plausible to infer that, under these circumstances, Petitioner had knowledge of the presence of the drugs due to the frequency of stops required for gas and the minimal amount of gas accepted by the

large sport utility vehicle.

Moreover, testimony at trial showed that Petitioner and his co-defendant provided the trooper conflicting stories regarding their relationship and the length of time that Petitioner's co-defendant had owned the vehicle.  The trooper who stopped Petitioner testified that when asked who owned the vehicle Petitioner stated that his wife owned it and that his wife was the passenger in the vehicle.  When asked how long his wife had owned the vehicle, Petitioner stated she had owned it for "three, four, five, six, maybe seven months." (Trial transcript vol. II, at 66).  Petitioner also told the trooper that he and his female passenger had been married about six months.  Petitioner told the trooper that he was traveling from California to Chicago, and the trooper testified that Petitioner appeared very nervous and distracted throughout the initial interview.  According to the trooper's testimony, the female passenger provided Utah identification and a driver's license reflecting two different names. The vehicle registration documents she provided to the trooper showed she had owned the vehicle only two or three weeks and she stated she had owned the vehicle about three weeks. The trooper testified that the passenger appeared very nervous and inappropriately laughed when asked if Petitioner was her husband.  The trooper testified that she denied that Petitioner was her husband or boyfriend.

Petitioner testified at the trial that when he was stopped on the interstate in Oklahoma County he was headed for Chicago to look for work as a truck driver but he could not remember which company or companies he was going to visit in Chicago or even where he was going to stay while he was in Chicago.  Petitioner testified that he had been born in

Mexico but had migrated to California, that he met his passenger only fifteen minutes before they started their cross-country journey together, and that on October 17, 2003, the day he was arrested, he owned a 1993 Suburban, which is the year and model of the vehicle Petitioner was driving when he was arrested.

Based on these and other facts presented at the trial, a rational jury could infer that Petitioner knew about and was at least in joint possession of the drugs found in the vehicle during the traffic stop.   Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found evidence of Petitioner's guilt of the trafficking offense beyond a reasonable doubt.  In Petitioner's Reply, Petitioner relies on his trial testimony that he had no knowledge or possession of the cocaine.  However, the jury obviously found his testimony not credible.   To the extent Petitioner seeks to have this Court re-weigh the credibility of the witnesses who testified at his trial, the <u>Jackson</u> standard does not allow for such reconsideration of the evidence.  The OCCA's rejection of this claim is not contrary to, or an unreasonable application of, the clearly-established <u>Jackson</u> standard.  Accordingly, Petitioner is not entitled to habeas relief concerning this claim.

IV. <u>Prosecutorial Misconduct</u>

In ground two, Petitioner contends that prosecutorial misconduct deprived him of a fair trial and due process. In support of this claim, Petitioner refers to the cross-examination of him conducted by the prosecutor.  Petitioner contends that the prosecutor "asked inappropriate questions, designed to incite prejudice against petitioner, by characterizing him as a member of a drug cartel, or participant in the 'drug trade.'" Petition, at 8.  Petitioner

10

contends that the prosecutor also "tried to depict petitioner as either as [sic] a 'controller' or 'mule' for drug cartels.'" Id.  Petitioner further refers to allegedly inappropriate statements by the prosecutor during closing arguments which Petitioner alleges were "designed to inflame jury against petitioner both racially as a Hispanic, and as a member of the 'drug trade.'" Id.

"In determining whether a petitioner is entitled to federal habeas relief for prosecutorial misconduct, it must be determined whether there was a violation of the criminal defendant's federal constitutional rights which so infected the trial with unfairness as to make the resulting conviction a denial of due process." Fero v. Kerby, 39 F.3d 1462, 1473 (10th Cir. 1994)(citing Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974)), cert. denied, 515 U.S. 1122 (1995).  Accord, Hoxsie v. Kerby, 108 F.3d 1239, 1243 (10th Cir.), cert. denied, 522 U.S. 844 (1997).  "To view the prosecutor's [conduct] in context, [the court must] look first at the strength of the evidence against the defendant and decide whether the prosecutor's [conduct] plausibly could have tipped the scales in favor of the prosecution." Fero, 39 F.3d at 1474 (internal quotation and citation omitted).

Although Petitioner does not cite to specific portions of the trial transcript to support his claim of prosecutorial misconduct, Petitioner asserts that he exhausted this claim of prosecutorial misconduct in his direct appeal.  Thus, it is assumed that Petitioner is relying on the same facts to support his claim of prosecutorial misconduct as he relied upon in his direct appeal.  In that appeal, Petitioner cited to questioning by the prosecutor in which the prosecutor asked Petitioner which cartel his family was associated with in Mexico, if he

understood how the drug trade worked, if he knew he needed to take the cocaine from point A to point B safely, if his co-defendant was being used solely to transport the drugs in her car, and whether he was there to make sure that his co-defendant did not steal the drugs from the cartel and give it to somebody else. Response, Ex. B, at 13-14 (Brief of Appellant)(citing to trial transcript, Vol. III, at 41, 58-59).   To each of these questions, Petitioner denied knowledge of or any participation in the trafficking of illegal drugs.

In his direct appeal, Petitioner also referred to a statement made by the prosecutor during closing arguments to support his claim of prosecutorial misconduct.[1]   Petitioner referred to the prosecutor's statement during closing argument in Petitioner's trial in which the prosecutor stated:

> Well, let me tell you right now, illegal drugs, cocaine, rips through this community, this state, this country.  You tell me what 19,000 grams is worth.  I would submit to you it's worth life.

Response, Ex. B, at 15 (Brief of Appellant)(citing to trial transcript, Vol. III, at 126).

The prosecutor's questioning of Petitioner concerning his participation in illegal drug trafficking did not render Petitioner's trial fundamentally unfair.  Petitioner was charged with trafficking in cocaine.   The evidence showed that Petitioner admitted he was driving a vehicle across the country from southern California to Chicago and that the vehicle contained

---

[1]Although Petitioner refers in his Petition to the prosecutor's "improper comments" during closing argument directed toward television shows and a movie depicting the illegal drug trade, Petitioner did not include this statement by the prosecutor as factual support for his prosecutorial misconduct claim in his direct appeal.  Petitioner includes this allegation of prosecutorial misconduct in his claim of "cumulative errors" discussed infra.

30 bundles of cocaine, each weighing between 1.3 and 1.8 kilograms, concealed in a steel box inside of the gasoline tank of the vehicle.  Petitioner and his co-defendant provided conflicting stories concerning their relationship and the ownership of the vehicle when they were stopped for a traffic violation on a highway that the trooper testified was a well-known cross-country drug trafficking corridor.   In his direct testimony, Petitioner denied any knowledge of or participation in illegal drug trafficking.  The trooper who arrested Petitioner and his co-defendant testified as to the trooper's experiences and training with respect to the methods generally employed in the transportation of illegal drugs in this country.  This testimony included descriptions of the manner in which illegal drugs are generally concealed in a vehicle and the usual presence of two persons in vehicles used to transport illegal drugs such as cocaine or heroin across the country.  The facts in Petitioner's case were consistent with the trooper's descriptions of the usual methods and manner of cross-country drug transportation.   The prosecutor's questions propounded to Petitioner during cross-examination were therefore highly relevant to the offense for which Petitioner was on trial.

"A prosecutor may not use closing argument to inflame the passions and prejudices of the jury." Malicoat v. Mullin, 426 F.3d 1241, 1256 (10th Cir. 2005), cert. denied, __ U.S. __, 126 S.Ct. 2356 (2006)(citing United States v. Young, 470 U.S. 1, 8 n. 5 (1985)).  In his direct appeal, Petitioner referred to a statement made by the prosecutor during closing argument as support for his claim of prosecutorial misconduct.  Petitioner asserted that this statement was intended to "appeal to societal alarm" and was therefore improper comment. However, the Petitioner cited to only a portion of the prosecutor's statement during closing

argument.  When considered in context, it is clear that the prosecutor was merely responding

to a statement made by Petitioner's trial counsel during closing argument.  The prosecutor

stated:

> Mr. Morrissette said that everything that happened at the scene
> rips through his core.  Well, let me tell you right now, illegal
> drugs, cocaine, rips through this community, this state, this
> country.  You tell me what 19,000 grams is worth.  I would
> submit to you it's worth life.  707 times the minimum of 28
> grams.  Life.  Life is appropriate in this case.  2.8 million dollars
> of street cocaine off the streets.  That's worth life.

Trial transcript, Vol. III, at 126.  The prosecutor's response was invited by defense counsel,

who stated during closing argument that the "[t]he very nature of this thing [Petitioner's

arrest] rips through me.  What happened out there was not only unfair, that fairness again,

but fundamentally wrong."  Trial transcript, Vol. III, at 98.  The prosecutor's statement was

also appropriately directed toward the jury's assessment of the length of the sentence that

could be imposed upon a finding of guilt.  Considered in the context of the entire trial, the

statement by the prosecutor did not unfairly prejudice Petitioner. See Duckett v. Mullin, 306

F.3d 982, 990 (10th Cir. 2002)("even an improper appeal to societal alarm typically does not

amount to a denial of due process")(internal quotation and citation omitted), cert. denied, 538

U.S. 1004 (2003).  The OCCA's rejection of this claim was not contrary to, or an

unreasonable application of, the well-established Donnelly standard.  Accordingly, Petitioner

is not entitled to habeas relief concerning this claim.

V. Disproportionate and Excessive Sentence

In his third ground for habeas relief, Petitioner contends that the sentence imposed for

14

his conviction of life imprisonment was disproportionate to the offense and mitigating factors, including his age, work, and family history, and excessive in violation of the Eighth Amendment.   Petitioner also contends that Oklahoma courts' refusal to conduct a proportionality review of his sentence deprived Petitioner of his rights under the Eighth Amendment.   Without deciding whether or not Petitioner is entitled to a proportionality review of his sentence under Supreme Court precedents, the Petitioner's sentence is not unconstitutionally disproportionate to his offense.

The Supreme Court has stated that

> [t]he prohibition against 'cruel and unusual punishments,' like other expansive language in the Constitution, must be interpreted according to its test, by considering history, tradition, and precedent, and with due regard for its purpose and function in the constitutional design.   To implement this framework we have established the propriety and affirmed the necessity of referring to 'the evolving standards of decency that mark the progress of a maturing society' to determine which punishments are so disproportionate as to be cruel and unusual.

Roper v. Simmons, 543 U.S. 551, 560-561 (2005).

In applying this standard to an Eighth Amendment challenge to a sentence of life imprisonment without parole imposed for illegal drug possession, the Supreme Court has concluded that a life sentence without parole is not disproportionate to the offense of possession of 672 grams of cocaine.   Harmelin v. Michigan, 501 U.S. 957 (1991). Testimony at Petitioner's trial showed that thirty bundles of controlled substances were removed from the vehicle Petitioner was driving across the country.   The bundles were consistent with each other in size, shape, and content, and each bundle weighed "well over" the minimum weight

necessary to support the crime of drug trafficking in Oklahoma. Trial transcript, Vol. II, at 178-179.  Seventeen of those bundles were tested, and the tests were positive for cocaine weighing between 1.30 and 1.80 kilograms each, or 1,300 to 1,800 grams each.

Moreover, Petitioner has the opportunity to seek parole, and this is a factor to be weighed in any proportionality review.  Hawkins v. Hargett, 200 F.3d 1279, 1284 (10th Cir. 1999), cert. denied, 531 U.S. 830 (2000).  Additionally, Petitioner's sentence was within the statutory range of punishment for the offense he committed, and courts "are reluctant to interfere with the legislative determination of an appropriate sentence range." Id. at 1285. Petitioner was twenty-three years old at the time of the offense.  Thus, Petitioner was clearly past the age of juvenile status, and there is no allegation or evidence of mental dysfunction. Petitioner's sentence of life imprisonment, considering Petitioner's age, the possibility of parole, and the serious nature of the crime he committed do not, when considered under the prevailing "evolving standards of decency" standard, violate the Eighth Amendment.  See id. (upholding sentence of life imprisonment imposed on a defendant for crimes committed at age thirteen).

Contrary to Petitioner's assertion, Petitioner has no constitutionally-protected right to a sentencing review involving consideration of mitigating factors. See Scrivner v. Tansy, 68 F.3d 1234, 1240 (10th Cir. 1995)(holding "no violation of a petitioner's Eighth Amendment or due process or equal protection rights occurs when the trial court does not consider mitigating factors during sentencing in a noncapital case"), cert. denied, 516 U.S. 1178 (1996).  The OCCA's rejection of Petitioner's claims of excessive sentence and denial

of a sentencing review of mitigating factors was not contrary to, or an unreasonable application of, clearly-established Supreme Court jurisprudence. Petitioner is therefore not entitled to habeas relief concerning this claim.

## VI. Procedural Default

In ground four of the Petition, Petitioner contends that the cumulative effect of trial court errors and prosecutorial misconduct denied him due process and a fair trial. In grounds five and six, Petitioner asserts that he was denied his Sixth Amendment right to effective assistance of trial counsel. In ground seven, Petitioner asserts that he was denied his Sixth Amendment right to effective assistance of appellate counsel. In ground eight, Petitioner contends that "actual innocence or miscarriage of justice" requires the reversal of his conviction and sentence. As support for these claims, Petitioner refers to a "Statement of Facts" attached to the Petition in which Petitioner sets forth seventeen, separately-numbered paragraphs describing alleged trial errors, instances of alleged judicial and prosecutorial misconduct, and instances of trial counsel's ineffectiveness.

Although Petitioner asserted a claim of "cumulative errors" in his direct appeal, the claim asserted by Petitioner in the instant Petition in ground four is a different claim based, *inter alia*, on trial errors that were not presented in support of his cumulative errors claim in his direct appeal. Petitioner's cumulative errors claim in ground four of his Petition mirrors the claim of cumulative errors Petitioner asserted in his state court post-conviction proceeding. Indeed, Petitioner states in the Petition that he raised this claim of cumulative errors in his post-conviction application.

In the post-conviction application filed by Petitioner in the state district court, Petitioner presented the identical "Statement of Facts" to support his "cumulative errors" claim as he has submitted herein to support the same claim. Response, Ex. E (Brief in Support of Application for Post Conviction Relief). The district court found that Petitioner was procedurally barred from raising all of the claims presented in his post-conviction application, except for his claim of ineffective assistance of appellate counsel, because he had failed to present the claims in his direct appeal. Response, Ex. D (Order Denying Application for Post-Conviction Relief). The court alternatively rejected each of the Petitioner's procedurally-defaulted claims on their merits. The court concluded that Petitioner had not shown he was denied effective assistance of appellate counsel and denied the post-conviction application.

In Petitioner's appeal of the post-conviction decision, the OCCA agreed with the district court that Petitioner had procedurally defaulted all of the claims asserted in his post-conviction application except for his claim of ineffective assistance of appellate counsel. The OCCA rejected this Sixth Amendment claim and affirmed the district court's decision. Response, Ex. F (Order Affirming Denial of Post-Conviction Relief).

On habeas review, federal courts will not review claims that have been defaulted in state courts on an independent and adequate state procedural ground, unless the petitioner demonstrates cause for the default and actual prejudice, or alternatively demonstrates a fundamental miscarriage of justice. Bousley v. United States, 523 U.S. 614, 622 (1998); Sawyer v. Whitley, 505 U.S. 333, 338-339 (1992); Coleman v. Thompson, 501 U.S. 722, 750

18

(1991); Hickman v. Spears, 160 F.3d 1269, 1271 (10th Cir. 1998). "'A state court's finding is considered independent if it is separate and distinct from federal law.'" Klein v. Neal, 45 F.3d 1395, 1397 (10th Cir. 1995)(quoting Brecheen v. Reynolds, 41 F.3d 1343, 1353 (10th Cir. 1994), cert. denied, 515 U.S. 1135 (1995)(internal quotations omitted)). "'A state court's finding is deemed to be adequate if it is applied evenhandedly; that is, if it is strictly or regularly followed.'" Id. (quoting Brecheen, 41 F.3d at 1353)(internal quotations omitted).

The OCCA's reliance on the court's well-established procedural bar rule is an independent and adequate ground for the court's decision in Petitioner's post-conviction appeal with respect to his procedurally-defaulted cumulative errors and "actual innocence" claims. See Johnson v. Champion, 288 F.3d 1215, 1227 n. 3 (10th Cir. 2002); Duvall v. Reynolds, 139 F.3d 768, 797 (10th Cir.), cert. denied, 525 U.S. 933 (1998). Thus, Petitioner must show cause for his procedural default and actual prejudice or that a fundamental miscarriage of justice would result from this Court's failure to consider the merits of this claim.

As to Petitioner's procedurally-defaulted claim of ineffective assistance of trial counsel, the Tenth Circuit Court of Appeals has recognized that Oklahoma's procedural bar rule will not be considered an adequate basis for the OCCA's decision not to review a procedurally-defaulted Sixth Amendment claim unless the petitioner was allowed "to adequately develop the factual basis of his claims of ineffectiveness" in the state courts. English v. Cody, 146 F.3d 1257, 1263 (10th Cir. 1998). Accord, Miller v. Champion, 161 F.3d 1249, 1252 (10th Cir. 1998). The procedural bar rule is not "adequate" to bar a claim

of ineffective assistance of trial counsel: "unless the state procedures comply with the imperatives set forth in <u>Kimmelman [v. Morrison</u>, 477 U.S. 365 (1986)]: (1) allowing petitioner an opportunity to consult with separate counsel on appeal in order to obtain an objective assessment of trial counsel's performance and (2) providing a procedural mechanism [on direct appeal] whereby a petitioner can adequately develop the factual basis of his claims of ineffectiveness. <u>English</u>, 146 F.3d at 1263.  In <u>English</u>, the circuit court concluded that Oklahoma's procedural bar rule may preclude federal habeas review of a claim of ineffective assistance of trial counsel when two conditions are met: (1) the petitioner had different counsel for appeal, and (2) the claim could have been resolved based on the trial record alone, or there existed at the time of direct appeal an adequate procedure to remand specific claims to the district court for supplementation of the record. <u>Id.</u> at 1263-1264.

Because Petitioner had separate counsel in his direct appeal, the first <u>English</u> factor in satisfied.  In his post-conviction appeal, Petitioner alleged that his trial counsel provided constitutionally ineffective assistance of counsel because of counsel's "failure to re-urge the motion to suppress at trial," "use of obsolete Guzman standard to challenge the justification for the traffic stop," "failures resulting in exclusion of defendant's testimony," and failure to inform Petitioner of his right to contact the Mexican consulate under the Vienna Convention.  Response, Ex. E (Brief in Support of Appeal from Denial of Post Conviction Relief), at 4.  The OCCA concluded that Petitioner's procedural default of his ineffective assistance of trial counsel claim barred review of the merits of the claim.  The OCCA stated in its decision that:

> [a] claim of ineffective assistance of trial counsel, available at the time of a defendant's direct appeal, must be presented in the direct appeal or it is waived. Because Petitioner neglected to present facts to the District Court demonstrating his .... allegations of ineffective assistance of trial counsel were such that they could not have been raised on direct appeal, he has not proven it was error for the District Court to conclude such claims were barred.

Response, Ex. F, at 3. All of Petitioner's claims of ineffective assistance of trial counsel could have been resolved based on the trial record. Petitioner alleged in his post-conviction application that he "informed trial counsel that he was a Mexican national." Response, Ex. 3, at 18. Although Petitioner fails to provide any specific details concerning the alleged communication, Petitioner is apparently asserting that the alleged information was communicated to his trial counsel outside of the courtroom. Nevertheless, the trial transcript reflects extensive discussions during trial concerning Petitioner's immigration status. Petitioner testified he was born in Mexico, had family living in Mexico, had a driver's license for six or seven years and had been issued a commercial driver's license in California, was married to an American citizen, had lived in California for ten years, was legally in this country, and had a work permit. Trial transcript, Vol. III, at 17-20, 24-25, 38, 44, 56, 67. His trial counsel stated during closing argument that Petitioner was a "22-year-old Hispanic male, born in Mexico, married to an American citizen....By the way, he has every right to be in this country. He is legal [because his is m]arried to an American citizen." Trial transcript, Vol. III, at 99. The record provided more than sufficient information from which the OCCA could have resolved the issue. Indeed, the OCCA found in Petitioner's direct appeal that "it is

evident that Petitioner's 'Vienna Convention claim' is one apparent from the record at the time of Petitioner's direct appeal, and thus a claim of which appellate counsel would have been aware upon his review of the trial court record." Response, Ex. F, at 4.  Therefore, the OCCA's reliance on its procedural bar rule was an adequate basis for the court's refusal to review the merits of Petitioner's procedurally-defaulted Sixth Amendment claim. Consequently,  Petitioner must show cause for his procedural default and actual prejudice or that a fundamental miscarriage of justice would result from this Court's failure to consider the merits of this claim.

"'Cause' must be 'something external to the petitioner, something that cannot fairly be attributed to him....'" Steele v. Young, 11 F.3d 1518, 1522(10th Cir. 1993)(quoting Coleman, 501 U.S. at 753).   In ground seven in the Petition, Petitioner asserts as a separate ground for habeas relief that he was denied his Sixth Amendment right to effective assistance of appellate counsel.  In support of this claim, Petitioner refers to the same "Statement of Facts" that he has relied upon to support his procedurally-defaulted claims in grounds four, five, six, and eight of the Petition.  Generously construing his *pro se* Petition, Petitioner is contending that ineffective assistance of appellate counsel provides both cause for his procedural default  in his direct appeal and a separate ground for habeas relief.

"Attorney error amounting to constitutionally ineffective assistance of counsel constitutes 'cause' for a procedural default." Hickman, 160 F.3d at 1272.  "Because the same legal standards govern [a habeas] petitioner's underlying claim of ineffective assistance of counsel and his closely related burden to show cause for his state law procedural default, [the

22

reviewing court] must determine whether [the] petitioner has shown cause concurrently with the merits of his ineffective assistance of counsel claim." Id. at 1273.

To establish "cause" sufficient to overcome the procedural bar based on ineffective assistance of appellate counsel, and to establish his separate claim of ineffective assistance of appellate counsel, Petitioner must satisfy both prongs of the test established in Strickland v. Washington, 466 U.S. 668 (1984); that is, he must show that his attorney's representation fell below an objective standard of reasonableness and that counsel's errors prejudiced the defense. Id. at 687.  "Judicial scrutiny of the adequacy of attorney performance must be strongly deferential: '[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Blackwell, 127 F.3d 947, 955 (10th Cir. 1997)(quoting Strickland, 466 U.S. at 689). "Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the error." Id.  Accord, Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Strickland, 466 U.S. at 689.  Prejudice, under the second prong, is shown by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.  "[T]here is no reason for a court deciding an ineffective assistance claim...to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

The Sixth Amendment "does not require an attorney to raise every nonfrivolous issue on appeal." Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995)(citing Jones v. Barnes, 463 U.S. 745, 751 (1983)).  "It is completely reasonable, and in fact advisable, for appellate

23

counsel to eliminate weak but arguable claims and pursue issues on appeal which are more likely to succeed." Jackson v. Shanks, 143 F.3d 1313, 1321 (10th Cir.), cert. denied, 525 U.S. 950 (1998). See Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999)(if omitted issue is meritless, then counsel's failure to raise it on appeal is not constitutionally ineffective assistance). If an issue that appellate counsel failed to raise has merit, the court must determine whether counsel's failure to raise the issue was deficient and prejudicial. Hawkins, 185 F.3d at 1152. "If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance...." Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003). If the omitted issue "has merit but is not so compelling ... [the court must assess] ... the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance." Id. See Hawkins, 185 F.3d at 1152 (if omitted issue is meritless, then counsel's failure to raise it on appeal is not constitutionally ineffective assistance).

In rejecting Petitioner's claim of ineffective assistance of appellate counsel in his post-conviction appeal, the OCCA stated that

> "[a]t most, Petitioner has only demonstrated that some of those claims that he raises on post-conviction were not raised on direct appeal. This is not enough to prove that his appellate counsel rendered ineffective assistance. Petitioner must additionally demonstrate appellate counsel's failure to raise such errors on appeal was not a rendering of 'reasonably effective assistance' under the circumstances of his case."

Response, Ex. F, at 3.  Because the OCCA adjudicated the merits of Petitioner's Sixth Amendment claim, the Petitioner must show that the OCCA's decision was contrary to, or an unreasonable application of, the <u>Strickland</u> standard.

With respect to the claim of cumulative errors that was procedurally defaulted in his direct appeal, judicial review of alleged cumulative errors "merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." <u>Hamilton v. Mullin</u>, 436 F.3d 1181, 1196 (10th Cir. 2006)(internal quotations omitted).

In the "Statement of Facts" attached to his Petition, Petitioner has alleged in brief, conclusory sentences that certain errors occurred during his trial and in "motions hearing[s]." Petitioner refers to pages of the trial transcript but he has not identified any legal authority to demonstrate the merit of the alleged errors.  Accordingly, Petitioner has not shown the legal merit of any of these alleged errors.  <u>See</u> <u>Garrett v. Selby, Connor, Maddux & Janer</u>, 425 F.3d 836, 840 (10th Cir. 2005)("[A]lthough we make some allowances for the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements, the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record.")(internal quotation marks and citation omitted). Moreover, considered individually and viewed in the context of the entire trial, appellate counsel's failure to raise these alleged errors in Petitioner's direct appeal was not

25

professionally unreasonable.

a. Trial Judge's Comments to the Jury at the Beginning of Trial

In his first "Statement of Facts," Petitioner refers to a statement by the trial judge at the beginning of trial in which the trial judge expressed appreciation for the jurors' service on the jury.[2]   Trial transcript Vol. I, at 4.   Petitioner contends that this was an "improper comment[ ] equating the jurors' duty to that of American troops on foreign soil, thus inciting prejudice in jurors against foreign nationals such as defendant." Petition, at 11e. In no way could this innocuous statement be accurately portrayed as an attempt to prejudice the jurors against Petitioner.   The Petitioner's allegation of judicial misconduct is meritless.

b. Admission of Testimony Concerning Methods of Trafficking Illegal Drugs Across the Country

Petitioner next asserts error in the admission of the arresting trooper's testimony concerning his experiences with and training in illegal drug trafficking and the usual manner in which illegal drugs are transported across the country.  This testimony was highly relevant

_____

[2]The trial judge was describing the jury's duty and stated: "Jury duty is a legal obligation. You should be proud to be here.  Hopefully, if I do my job correctly, by the end of the trial you will have been proud to have served on a jury these next few days with us.  We have the greatest system in the world.  We have the greatest criminal justice system in the world.  There is none better, bar none.  Many people throughout the years have fought and died and given their lives so that this system could continue.  We have many troops on foreign soil today as we speak fighting for our right to continue this system.  So by you being here and providing your services this week you are providing a service to your country just as the troops are providing a service to this country by showing the world that this system will never fail....So you should be very proud to be here serving your community [and] your state [and] your country and showing the world that no matter what they do to us you will continue to assist the rest of the citizens of this country to see that the system continues." Trial transcript, Vol. I, at 4.

to the issue before the jury, and this allegation of trial error in the admission of evidence is meritless.

c. Exclusion of Petitioner's Testimony Concerning Trooper's Statements to Petitioner

Petitioner contends that the trial court erred in excluding his testimony concerning the trooper's statements to him in their initial conversation during the traffic stop. Petitioner has not alleged what those statements were or how their absence prejudiced him. Accordingly, Petitioner has failed to show that the trial judge's ruling on the admissibility of evidence rendered his trial fundamentally unfair, and the claim of error is without merit.

d. Exclusion of Documents Related to Petitioner's Employment

Petitioner contends that the trial court erred in excluding evidence he proferred during trial to support his testimony that he was employed as a truck driver. During his trial testimony, Petitioner attempted to introduce into evidence a copy of a paycheck he had received the previous week. Trial transcript, Vol. III, at 33. Petitioner also attempted to introduce a copy of an inspection report which Petitioner testified was completed every three months with respect to "the trucks, the tires, and the brakes..." Trial transcript, Vol. III, at 34. The prosecutor objected to the introduction of this evidence on the ground that it was not relevant to the issue of Petitioner's guilt or innocence of the offense, and the trial court sustained the objection. Trial transcript, Vol. III, at 35-37.  The proferred evidence related to Petitioner's employment at the time of trial, and the offense for which he was being tried occurred two years earlier. Petitioner has not shown that the trial court's ruling on the admissibility of this proferred evidence rendered his trial fundamentally unfair. This claim

27

of trial error is without merit.

e. Prosecutor's Cross-Examination of Petitioner

Petitioner contends that the prosecutor asked Petitioner "improper questions" during cross-examination "designed to inflame prejudice among jurors against defendant as a participant in the 'drug trade.'" Petition, at 11e.  This allegation of prosecutorial misconduct was asserted in Petitioner's direct appeal.  This claim of prosecutorial misconduct has previously been found to be without merit.

f. Prosecutor's Closing Argument

Petitioner cites in his "Statement of Facts" the allegedly inappropriate comments and argument by the prosecutor concerning the trafficking of illegal drugs in this country. However, Petitioner's appellate counsel asserted a claim of prosecutorial misconduct in the direct appeal.  Petitioner apparently is complaining that his appellate counsel focused on particular instances of alleged prosecutorial misconduct and should have raised other instances of alleged prosecutorial misconduct.   In particular, Petitioner refers to the prosecutor's "improper comments regarding media depictions of the 'drug trade,' including news programs such as 'Dateline,' '20/20,' '48 Hours,' and movies such as 'Traffic.'" Petition, at 11e.  The record shows that the prosecutor stated during closing argument,

> Trooper Plunkett talked to you about how the drug world works, how the drug trade works.  That the drug world is probably something that is foreign to many of you.  You read what you see in the paper.  Hear what you see on the news.  Maybe watch 'Dateline,' '20/20,' or '48 hours.'  Maybe you've seen the movie 'Traffic,' whatever it is, but you heard firsthand knowledge of Trooper Mike Plunkett yesterday from the front

> line.  What he does, the things that he looks for, the things that
> he has been trained to look for, the things that he teaches other
> officers, other young officers that are going to the front lines to
> look for.   Ladies and Gentlemen, there is no doubt this
> defendant knew what was going on.

Trial transcript, Vol. III, at 84-85.  This statement by the prosecutor cannot, as Petitioner

suggests, be described as "improper comments regarding media depictions of the drug trade."

Petition, at 11e.  Rather, the statement was obviously intended to focus the jury on the

testimony of Trooper Plunkett despite their possible exposure to other media depictions of

the manner and methods used in transporting and distributing illegal drugs.  Petitioner has

not shown that this statement has legal merit.

g.  Alleged Error in Exclusion of Evidence During Pre-trial Motion to Suppress, Trial
Counsel's Alleged Ineffective Assistance During Pre-trial Motion to Suppress, and  Alleged
Abuse of Trial Court's Discretion in Rulings During Pre-trial Motion to Suppress

Petitioner asserts that errors occurred during the pre-trial hearing on the motion to

suppress the evidence urged by his defense counsel and the defense counsel for his co-

defendant.  The transcript of this hearing reflects that counsel for Petitioner and his co-

defendant asserted that a Fourth Amendment violation occurred as a result of the traffic stop.

Transcript of Motion Hearing Proceeding Had On The 29th Day of May 2002.  Counsel

argued that the traffic stop was  unsupported by probable cause to believe a traffic violation

had occurred.   A traffic stop is permissible under the Fourth Amendment if "the officer has

a reasonable articulable suspicion that a traffic ... violation has occurred or is occurring."

United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998).  "It is reasonable for an

officer to ask questions [during a traffic stop] about the motorist's travel plans and authority to operate the vehicle." United States v. Alcaraz-Arellano, 441 F.3d 1252, 1258 (10th Cir. 2006). A dog sniff during a traffic stop does not violate the Fourth Amendment if it does not extend the stop "beyond the time reasonably required to complete" the initial purpose of the traffic stop. Illinois v. Caballes, 543 U.S. 405, 125 S.Ct. 834, 837-838 (2005). At the hearing on the motion to suppress, the trial court rules that the trooper stopped the vehicle after observing two traffic violations, and that the length of the detention was not unreasonable. Transcript of Motion Hearing Proceeding Had On The 29th Day of May 2002, at 40-41. Based on these findings, the motions to suppress were overruled. Id. at 41. The arresting highway patrol trooper testified at Petitioner's trial that he observed Petitioner changing lanes without properly signaling and entering and driving onto an exit ramp at an excessive speed. Trial transcript, Vol. II, at 56-57. The trooper testified that at that time he could not see who was inside the vehicle, and that he was "a football field away" from the vehicle when he observed the improper lane change. Trial transcript, Vol. II, at 56-57. In light of the trooper's testimony, Petitioner's allegation of a Fourth Amendment violation is meritless. Petitioner's remaining allegations of error in the exclusion of evidence during the hearing on the motion to suppress fail to raise any issues of legal merit.

Petitioner's assertion that his trial counsel provided constitutionally ineffective assistance of counsel by inadequately presenting a legal argument in favor of the motion to suppress is without merit. The record of the motion to suppress hearing reflects that Petitioner's trial counsel and the defense counsel for Petitioner's co-defendant presented a

joint motion to suppress the evidence obtained in the search of the vehicle.  Defense counsel argued that the traffic stop was unsupported by probable cause but rather was based on suspicion of criminal activity and therefore the search was therefore fruit of the illegal seizure and not predicated upon a sufficient legal basis.  This argument was not objectively unreasonable under the circumstances. Petitioner also refers to his trial counsel's inadequate argument in rebuttal to the prosecutor's hearsay objection with respect to Petitioner's testimony "regarding events during traffic stop..."  The trial record shows that although the prosecutor's objection on hearsay grounds to Petitioner's attempt to testify concerning the trooper's statements to Petitioner was sustained, Petitioner was able to testify concerning his own statements to the trooper at the time of the traffic stop.  Petitioner's defense counsel asserted that the prosecutor's objections were unwarranted, and his inability to overcome the objection is not objectively unreasonable assistance.  Accordingly, Petitioner's allegation of a Sixth Amendment violation regarding the adequacy of counsel's trial and pretrial legal arguments is meritless.

Petitioner also contends that the presiding judge erred in making various rulings regarding the admissibility of evidence during the pre-trial motion to suppress.  Petitioner has not shown that these alleged trial errors stemming from the judge's rulings on the admissibility of evidence rendered his trial fundamentally unfair, and this claim of trial error is without merit.

h. Trial Counsel's Alleged Ineffective Assistance in Failing to Notify Petitioner of his Right to Contact Mexican Consulate and Violation of Petitioner's Alleged Right to Consular

Notification

Petitioner contends that his trial counsel provided ineffective assistance by failing to notify Petitioner of his right to contact the Mexican Consulate for assistance with his defense after he informed defense counsel that he is a citizen of Mexico.  Petitioner also asserts that he was denied the right to contact the Mexican Consulate because no authority informed him of this right at the time of his arrest.  Petitioner raises these claims both as part of his "cumulative errors" claim and as a separate Sixth Amendment claim.  As cause for his procedural default of these claims in his direct appeal, Petitioner contends his appellate counsel provided constitutionally ineffective assistance by failing to raise them in his direct appeal.

Pursuant to Article 36 of the Vienna Convention on Consular Relations ("Vienna Convention"), "when a national of one country is detained by authorities in another, the authorities must notify the consular officers of the detainee's home country if the detainee so requests." Sanchez-Llamas v. Oregon, ___ U.S. ___, 126 S.Ct. 2669, 2675 (2006).  In the Sanchez-Llamas case, the Supreme Court addressed the issues of whether Article 36 of the Vienna Convention creates rights that defendants may invoke against detaining authorities in a criminal trial or post-conviction proceeding, whether suppression of evidence is a proper remedy for a violation of Article 36, and whether an Article 36 claim may be forfeited under state procedural bar rules for failing to raise the claim at trial.  Sanchez-Llamas, a Mexican national, was arrested in 1999 and made incriminating statements to officers during a post-arrest interrogation and without being advised that he could ask to have the Mexican

Consulate notified of his detention.  Id. at 2675-2676.  He moved to suppress his statements on the ground that the statements were made involuntarily and because the authorities had failed to comply with Article 36 of the Vienna Convention. Id. at 2676.  Another petitioner, Mr. Bustillo, in the Sanchez-LLamas case who was a Honduran national was convicted and then asserted for the first time  in a state court habeas petition that his right to consular notification under Article 36 had been violated.  Id.  Mr. Bustillo also argued that his defense attorney should have advised him of his right to notify the Honduran Consulate of his arrest and detention.

The Supreme Court rejected the contention that Article 36 required the judicial remedy of exclusion of evidence in a criminal proceeding in which the defendant was not informed of his ability to advise his nation's consulate of his arrest.  Indeed, the Supreme Court noted that

> Article 36 does not guarantee defendants *any* assistance at all. The provision secures only a right of foreign nationals to have their consulate *informed* of their arrest or detention - not to have their consulate intervene, or to have law enforcement authorities cease their investigation pending any such notice or intervention.  In most circumstances, there is likely to be little connection between an Article 36 violation and evidence or statements obtained by police.

Id. at 2681.  Relying on the Court's previous decision in Breard v. Greene, 523 U.S. 371 (1998), the Supreme Court also rejected Mr. Bustillo's claim that Article 36 requires courts to set aside their state procedural bar rules for Article 36 claims.  The Court found that "Article 36 makes clear that the rights it provides 'shall be exercised in conformity with the

laws and regulations of the receiving State'" and that "this means that the rule of procedural default - which applies even to claimed violations of our Constitution...- applies also to Vienna Convention claims." Id. at 2685(internal citation omitted).  Having reached this decision with respect to the petitioners' underlying claims, the Supreme Court declined to resolve the question whether the Vienna Convention grants individuals enforceable rights. Id. at 2677.

The Tenth Circuit Court of Appeals has also declined to resolve the issue of whether the Vienna Convention creates individually enforceable rights. In United States v. Chanthadara, 230 F.3d 1237, 1256 (10th Cir. 2000), the circuit court found that even presuming the Vienna Convention created individually enforceable rights the appellant had not demonstrated that denial of the rights caused him prejudice. Id.  The court noted that the appellant had lived in the United States since he was six years old, he spoke fluent English, he indicated no link to his native Laos other than technical citizenship, and he never requested officials to contact the Laotian consulate. Id.  Because there is no clearly established federal law directing that Article 36's provision regarding consular notification constitutes a judicially-enforceable right, the OCCA's decision that Petitioner's appellate counsel did not provide constitutionally ineffective assistance of counsel by failing to assert this claim of violation of the right to notification under Article 36 was not contrary to, or an unreasonable application of, clearly established federal law.

For Petitioner to establish that he received ineffective assistance of trial counsel based on counsel's failure to inform him of the opportunity to advise the Mexican Consulate of his

arrest and detention under Article 36 of the Vienna Convention, Petitioner must demonstrate both prongs of the <u>Strickland</u> standard.   In Petitioner's state court post-conviction proceeding, Petitioner contended he had shown prejudice from the alleged violation of his Article 36 right to consular notification and prejudice from counsel's failure to advise him of his Article 36 rights because testimony by "Mexican police agencies[,] ...a Mexican psychologist or social worker... [and] Mexican law enforcement officials" would have rebutted the prosecution's evidence presented at his trial.  Response, Ex. E, (Brief in Support of Application for Post-Conviction Relief), at 17.   However, in this Court, Petitioner now seeks to supplement the record to include a letter dated May 18, 2006, from the Secretary of Exterior Relations of the Mexican Consulate's office in Kansas City, Missouri.  Petitioner requests that his Motion to Supplement Record be granted pursuant to Rule 7, Rules Governing Section 2254 Cases in the United States District Courts ("Rule 7").   Respondent contends that Petitioner's Motion to Supplement the Record with this letter from the Mexican Consulate's office should be denied because (1) the letter does not fall within the description of materials that can be used to supplement the record in this habeas proceeding under Rule 7 and (2) because the information has not been submitted to a state court the admission of this evidence would render his Vienna Convention claim unexhausted.

Rule 7 allows the record in a federal habeas proceeding to be expanded with "letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge" and "[a]ffidavits...."   The letter proferred by Petitioner is dated May 18, 2006, and it therefore does not predate the Petition, which was

filed on October 28, 2005.  Contrary to Petitioner's assertion, the letter is not an affidavit as it bears no notary seal or other authenticating marks.  Thus, Rule 7 provides no basis for the Court's consideration of this letter, and Petitioner has not alerted the Court to any other justification for judicial review of the letter which obviously has never been presented to a state court.

Moreover, pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petitioner who alleges he is being held in violation of "treaties of the United States" will generally not be entitled to an evidentiary hearing if he "has failed to develop the factual basis of [the] claim in State court proceedings." 28 U.S.C. § 2254(a), (e)(2). Petitioner has not shown that he is entitled to an evidentiary hearing under any of the alternative provisions of this statute.   Petitioner's Motion to Supplement Record is denied.

Considering Petitioner's assertions of prejudice from the alleged Article 36 violation made in his state court post-conviction proceeding, the assertions that the Mexican Consulate would have provided specific witnesses who would have given specific testimony that would have rebutted the prosecution's evidence were purely speculative.  Petitioner had privately-retained counsel throughout his state court criminal proceeding.  His defense counsel moved to suppress the evidence obtained in the search of the vehicle and vigorously cross-examined the prosecution's witnesses.  Petitioner testified at his trial and presented his defense of lack of knowledge and possession of the drugs.  At the time of his trial, Petitioner testified he had been born in Mexico but moved to the United States when he was fifteen years old and that he was married to an American citizen.  Petitioner testified that he had family in Mexico but

he testified he had not been outside of the state of California until the day before his arrest. On cross-examination, he indicated that he had been to Oregon on one occasion and to Las Vegas, but he did not testify to having any close ties with Mexico. An interpreter assisted Petitioner with his testimony in his defense.  Even assuming that Petitioner's counsel erred by failing to inform Petitioner of his opportunity under Article 36 to alert the Mexican Consulate of his arrest and detention, Petitioner has not shown a reasonable probability that the result of the trial would have been different had he been so informed.  Accordingly, because Petitioner's claim of ineffective assistance of trial counsel was without merit, Petitioner has not shown that his appellate counsel provided objectively unreasonable professional assistance by failing to assert a claim of ineffective assistance of trial counsel based on this alleged error in the Petitioner's direct appeal.

Petitioner has not demonstrated that he received ineffective assistance of appellate counsel in his direct appeal, and he has not shown cause for his procedural default of the cumulative errors, ineffective assistance of trial counsel, and actual innocence claims in his direct appeal.  Under these circumstances, it is not necessary to determine whether Petitioner has demonstrated actual prejudice as a result of the procedural default.

Petitioner's state court procedural default of his claims in grounds four, five, six, and eight bars federal habeas review of the same claims absent a demonstration of a fundamental miscarriage of justice.  This narrow exception to the procedural default doctrine "is available only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence." Herrera v. Collins, 506 U.S. 390, 404 (1993).  Although Petitioner asserts

in ground eight of the Petition that he has evidence of his "actual innocence or miscarriage of justice," Petitioner refers to the same "Statement of Facts" on which he relies to support his other procedurally-defaulted claims.  None of these brief, conclusory statements, which include only references to the trial transcript for support, create any inference of Petitioner's actual innocence.  The previous finding that sufficient evidence of Petitioner's guilt was presented at his trial to support his conviction is determinative of the issue of fundamental miscarriage of justice.

Petitioner has failed to show that a fundamental miscarriage of justice would result from the application of the procedural default doctrine.  Accordingly, Petitioner's state court procedural default bars federal habeas review of the claims asserted in grounds four, five, six, and eight of the Petition.

RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED.  Petitioner's Motion to Supplement Record (Doc. # 35) is DENIED.  Petitioner's Motion for Leave to File Oversized Reply Brief (Doc. # 34) is GRANTED.  Petitioner is advised of his right to file an objection to this Second Supplemental Report and Recommendation with the Clerk of this Court by   August 15th   , 2006, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The Petitioner is further advised that failure to make timely objection to this Second Supplemental Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein.  Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991).

38

This Second Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this ____26th____ day of ____July____, 2006.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE